IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| CHARLES BRYANT | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:16-CV-086 (LJA) |
| | : | |
| PROGRESSIVE MOUNTAIN | : | |
| INSURANCE COMPANY, | : | |
| JOHN DOES (1-30) | : | |
| | : | |
| Defendants. | : | |

_____

**ORDER**

Before the Court is Defendant Progressive Mountain Insurance Company's Partial Motion to Dismiss Plaintiff's claims 1-4 and 6-11. (Doc. 4). For the reasons set forth below, Defendant's Motion is **GRANTED**.

**PROCEDURAL BACKGROUND**

Plaintiff, Charles Bryant, commenced this action on April 5, 2016 in the Superior Court of Grady County, State of Georgia. (Doc. 1-2). Defendant filed its Answer on May 11, 2016 (Doc. 1-3), and thereafter filed a Notice of Removal to this Court on May 19, 2016 pursuant to 28 U.S.C. § 1332, invoking this Court's diversity jurisdiction. (Doc 1). Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant filed the present Motion on June 7, 2016. (Doc. 4-1).

This action arises out of Defendant's refusal to pay a first-party insurance claim made by Plaintiff against Defendant. (Doc. 1-2). The Complaint asserts twelve causes of action: (1) breach of contract to pay claim; (2) breach of contract – consequential damages; (3) fraud; (4) fraud – consequential damages; (5) bad faith; (6) violation of the Georgia Uniform Deceptive Trade Practices Act and violation of the Fair Business Practices Act; (7) negligent misrepresentation; (8) unjust enrichment; (9) statutory damages and negligence per se; (10)

punitive damages; (11) attorney's fees; and (12) statutory attorney's fees. (Doc. 1-2 ¶¶ 40–118). Defendant moves to dismiss claims 1–4 and claims 6-11. (Doc. 4-1).

As a threshold issue, Plaintiff notes that Defendant's Answer, which was filed prior to the present Motion, raises the defense of failure to state a claim. (Doc. 5 citing Doc. 1-3). Therefore, Plaintiff argues, Defendant's Motion is a "nullity and must be stricken." (Doc. 5 citing *Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001) (holding that a motion pursuant to Fed. R. Civ. P. 12(b)(6) filed after an answer which states failure to state a claim as a defense is a nullity)). However, the Court "may construe the Rule 12(b)(6) motion as one seeking judgment on the pleadings under Rule 12(c). *Whitehurst v. Wal-Mart Stores East, L.P.*, 329 F. App'x 206, 208 (11th Cir. 2008). Defendant preserved the defense of failure to state a claim by raising it in its answer. *See* (*Id.*). "In so doing, however, [Defendant cannot] assert the defense in a Rule 12(b)(6) motion." *See* (*Id.*). "Nevertheless, when construed as a Rule 12(c) motion for judgment on the pleadings, [Defendant's] motion [is] timely." *See* (*Id.*). Thus, in the interest of judicial economy, the Court construes the Defendant's Motion as a motion for judgment on the pleadings pursuant to Rule 12(c).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The pleadings in this case are closed as Plaintiff filed the Complaint, Defendants answered, and no counterclaims, crossclaims, or third-party complaints have been filed. *See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014); *see also* Fed. R. Civ. P. 7(a). Accordingly, a motion pursuant to Rule 12(c) is proper.

"In determining whether a party is entitled to judgment on the pleadings, we accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party. *Perez*, 774 F.3d at 1335 (internal citation omitted). Because "judgment on the pleadings is limited to consideration of 'the substance of the pleadings and any judicially noticed facts,'" the Court cannot consider facts introduced in the parties' briefing on Defendants' Motion. *Armstrong v. Cummins*, 2009 WL

2709954, at *2 (M.D. Ala. Aug. 26, 2009) (quoting *Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998)).

"A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is subject to the same standard as a Rule 12(b)(6) motion to dismiss." *U.S. v. Wood*, 925 F.2d 1580, 1581 (11th Cir. 1991); *see also Everidge v. Wells Fargo Bank*, 2015 WL 5786738, at *8 n.8 (M.D. Ga. Sept. 29, 2015). Therefore, "a complaint must contain specific factual matter, accepted as true to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if the complaint alleges enough facts to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. While "all well pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff," *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999), the same liberal reading does not apply to legal conclusions. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012). "[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678-79. Additionally, "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Id.* at 678.

## FACTUAL BACKGROUND[1]

On or about October 2, 2015, Plaintiff purchased an automobile liability and collision insurance policy from Defendant for Plaintiff's 1995 Peterbilt 379 truck ("Truck"). (Doc. 1-2 ¶ 10). Plaintiff paid all premiums due on the policy. (*Id.* ¶ 11). On November 14, 2015, Plaintiff parked his Truck at Susie Q's BP Service Station at 45 U.S. Highway 84 East, Cairo, Georgia. (*Id.* ¶ 12). Plaintiff left the Truck in neutral, set the brake,

---

[1]   Unless specifically indicated, the facts are taken from the allegations in Plaintiff's Complaint (Doc. 1-2), which are accepted as true for purposes of this Motion.

and went into the station. (*Id.*). The brakes failed to hold, and the Truck went down a hill, across Highway 84, and crashed into a Dairy Queen restaurant. (*Id.* ¶ 13).

Officer Shannon Lang of the Cairo Police responded, and under his direction, Plaintiff attempted to drive the Truck from the scene. (*Id.* ¶ 14). However, the Truck would not move as it was stuck on concrete from barriers in front of the Dairy Queen, and the rear differential was broken. (*Id.*). The Cairo Police then called Mr. Rusty Evans to tow the truck from the scene because it was blocking Highway 84. (*Id.* ¶ 15). Two steel posts set in concrete had been installed in front of the Dairy Queen to protect the Dairy Queen from runaway vehicles such as Plaintiff's. (*Id.* ¶ 16). At the time of Plaintiff's accident, the posts did indeed protect the Dairy Queen building, but the force of Plaintiff's truck knocked the posts down, and the concrete in which they were set came out of the ground. (*Id.*). Plaintiff's Truck rode up on the concrete, and this prevented the Truck from moving under its own power. (*Id.* ¶ 17). Mr. Evans was able to drag the truck off the concrete where it was stuck. (*Id.* ¶ 18). After Mr. Evans removed the Truck from the concrete, Plaintiff attempted to drive the Truck away, but the truck would not move because the rear differential was broken. (*Id.* ¶ 19). Mr. Evans ultimately towed the Truck to Plaintiff's home. (*Id.* ¶ 20).

On or about November 20, 2015, Mr. Evans spoke to Mr. Daniel Howard, a Commercial Claims Adjuster for Defendant. (*Id.* ¶ 21). Mr. Howard requested that Mr. Evans tow Plaintiff's Truck to Mr. Evan's shop for diagnosis and repair. (*Id.*). Mr. Howard asked that Mr. Evans disassemble the differential for inspection. (*Id.*). Mr. Evans agreed to disassemble the differential, but first asked for assurance of payment from Defendant. (*Id.*). Mr. Howard replied that he had been instructed by "higher ups" to deny the claim for the differential at this time, and he suggested that Mr. Evans request authorization for payment from Plaintiff. (*Id.* ¶ 22). As an accommodation to Plaintiff, Mr. Evans disassembled the differential without charge. (*Id.* ¶ 23). Defendant refused to pay for the disassembly of the differential after Defendant denied coverage, and Mr. Evans has not been paid for the disassembly. (*Id.*).

After the disassembly, Mr. Howard asked Mr. Evans if he would be willing to provide a statement that the damage to the rear differential was caused by wear and tear rather than by the accident. (*Id.* ¶ 24). Mr. Evans declined to do so, and he informed Mr. Howard that it would be impossible to determine what caused the damage through an internal examination of the parts. (*Id.*). Mr. Evans explained that the parts might appear to be in perfect condition, but a bearing could seize and cause extensive damage without any evidence; on the other hand, according to Mr. Evans, the parts might look quite worn, but work perfectly for thousands of miles. (*Id.*). Mr. Evans informed Mr. Howard that he believed it highly improbable that the differential failed catastrophically at the exact time of the accident without any effect from the accident. (*Id.* ¶ 25). In Mr. Evans' opinion, the differential was broken after the accident when the police and Plaintiff attempted to move the Truck before the tow truck arrived. (*Id.*). Alternatively, Mr. Evans believed the differential was broken during the accident when the Truck struck the steel poles in front of the Dairy Queen. (*Id.* ¶ 26).

Mr. Evans sent a bill for towing to Defendant. (*Id.* ¶ 27). Mr. Evans informed Mr. Howard that he would not release the Truck until the bill for towing and storage was paid. (*Id.*). Defendant paid the bill on or about January 15, 2016. (*Id.*). At that time, the Truck was released to Plaintiff. (*Id.*).

On or about November 20, 2015, Plaintiff filed a claim with Defendant for indemnification of his insured losses under his policy. (*Id.* ¶ 29). Plaintiff complied with all policy requirements and deadlines when filing his claim. (*Id.* ¶ 30). On January 19, 2015, the Defendant denied Plaintiff's claim. (*Id.* ¶ 31). Defendant's denial stated:

> We completed an inspection of the vehicle. There was no physical damage to the rear differential. The damage to the torn down housing indicates the damage was the result of an internal failure and caused the puncture to the housing. Our investigation found the damages to the rear differential was caused by an internal (mechanical failure) not a collision event but wear and tear from use before and after this loss occurred. Your policy contains an exclusion for damages resulting from mechanical failure. Therefore, coverage does not apply.

(*Id.*).

5

No one examined the differential except Mr. Howard, who is not an expert mechanic. (*Id.* ¶ 32). Defendant did not offer any facts from which it concluded that the damages to the rear differential was caused by an internal mechanical failure, and the letter did not contain a method by which Plaintiff could contest or request review of the denial. (*Id.* ¶¶ 33 and 34). On or about January 29, 2016, Plaintiff sent a demand letter for the amount of $24,000.00, specifically citing O.C.G.A. § 33-4-6. (*Id.* ¶ 35). No portion of the demand has been paid. (*Id.* ¶ 36).

On March 14, 2016, Defendant sent a letter to Mr. Melvin Horne, attorney for Plaintiff, which stated, "Progressive will honor the damages to [Plaintiff's] rear differential. A payment in the amount of $3,036.85 will be issued for the damages sustained to the differential." (*Id.* ¶ 37). The letter further stated:

> Our offer to resolve the damages to the differential is an offer of settlement to resolve this claim. Mr. Bryant does not have loss of use/rental/down time on his policy. Progressive reserved its right for coverage denial on this loss and were well within our rights to do so. The reasoning for the denial stands. In an attempt to settle the claim, Progressive is agreeing to pay for the differential.

(*Id.* ¶ 38). Plaintiff rejected Defendant's settlement offer. (*Id.* at 38).

## ANALYSIS

Plaintiff alleges twelve causes of action in violation of Georgia state law. (Doc. 1-2). Defendant moves for the dismissal of all of Plaintiff's causes of action, with the exception of Plaintiff's fifth cause of action for bad faith and Plaintiff's twelfth cause of action for attorney's fees. The fifth and twelfth claims are brought pursuant to O.C.G.A § 33-4-6. (Doc. 4-1). Defendant argues that O.C.G.A § 33-4-6, which addresses liability of insurers for damages and attorney's fees in the case of a bad faith refusal to pay claims, is Plaintiff's exclusive remedy, and thus, all other claims are barred. (*Id.*). Alternatively, Defendant argues that dismissal is appropriate because Plaintiff has failed to state appropriate claims. (*Id.*).

### I. **Plaintiff's First and Second Causes of Action: Breach of Contract to Pay Claim and Consequential Damages**

Plaintiff alleges that Defendant has breached its contract with Plaintiff by

(a) Refusing to deliver a complete copy of the Policy of Insurance to the insured when it was requested; (b) Failing to disclose that the services supplied

6

>by Defendant and purchased by Plaintiff were not what Defendants represented them to be; (c) Failing to disclose that the services supplied by Defendants and purchased by Plaintiff were not what Plaintiff requested from the Defendant; (d) Failing to act in good faith; (e) Breaching warranties existing because of the contracts; (f) Failing to perform as required by the contract; (g) Refusing to indemnify Plaintiff for his covered loss; (h) Such other actions now unknown but to be proven at trial.

(Doc. 1-2 ¶ 42).

Defendant argues that Plaintiff's breach of contract should be dismissed because O.C.G.A § 33-4-6 is the exclusive remedy against an insurance company that denies benefits. (Doc. 4). Because, however, Georgia courts have "implicitly recognized the ability of an insured to bring a breach of contract claim and a claim for bad faith simultaneously," O.C.G.A. § 33-4-6 does not bar Plaintiff's breach of contract claim. *Estate of Thornton v. Unum Life Ins. Co. of America*, 445 F.Supp.2d 1379, 1382 (N.D. GA 2006) (citing *Assurance Co. America v. BBB Service Co., Inc.*, 259 Ga. App. 52 (2002)).

"In Georgia, the essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." *Brooks v. Branch Banking and Trust Co.*, 107 F.Supp.3d 1290, 1295 (N.D. GA 2015) (internal quotation marks omitted). "A plaintiff asserting a breach of contract claim must allege a particular contractual provision that the defendants violated to survive a motion to dismiss." *Id.* at 1296. In this case, Plaintiff has made broad allegations regarding Defendant's alleged breach, but Plaintiff has failed to allege a particular contractual provision that the Defendant has violated. Because a motion for judgment on the pleadings relies upon the same standard as a motion to dismiss, *Wood*, 925 F.2d at 1581, Plaintiff's breach of contract claim does not survive a motion for judgment on the pleadings. Further, as Plaintiff's second cause of action, "Breach of Contract – Consequential Damages," is premised upon Plaintiff's breach of contract claim, Plaintiff has failed to plead this claim adequately. As such, both claims are subject to dismissal.

## II. **Plaintiff's Third and Fourth Causes of Action: Fraud and Consequential Damages**

Plaintiff alleges a claim for fraud, stating that "Defendants made a series of false representations to Plaintiff Charles Bryant regarding the insurance offered and the method the Defendant used in paying its claims associated with the Policy he purchased for his truck." (Doc. 1-2 ¶ 56). Further, Plaintiff states, "Defendants falsely represented that premiums paid would entitle him to prompt payment of claims which were obviously due and payable, such as towing charges and damages from a collision, without the Defendant withholding valid payments as pressure to cause Plaintiff Charles Bryant to settle any disputed items." (*Id.* ¶ 57).

Defendant argues that Plaintiff's fraud claim rests on Defendant's "alleged failure to properly adjust and promptly pay out on Plaintiff's first party property damage claim. [Plaintiff's] claimed damages are based on Defendant's alleged refusal to 'pay the towing charges until Plaintiff agreed to drop his claim for the differential.'" Plaintiff argues that because of this refusal, "he lost 8 weeks use of the vehicle." (Doc. 4-1 at 5 quoting Doc. 1-2 ¶ 65). Defendant again contends that Plaintiff's fraud claims are "duplicative of Plaintiff's bad faith claim, and that remedy provides Plaintiff's exclusive avenue for recovery for that allegedly wrongful conduct." (*Id.*).

In response, Plaintiff cites *McGowan v. Progressive Ins. Co.*, 637 S.E. 2d 27 (Ga. 2006), in which the Georgia Supreme Court allowed a plaintiff's claim for fraud against an insurer to go forward. (Doc. 5 at 9). In *McGowan*, the court noted that "this case does not involve a good faith dispute over what State Farm needed to pay [plaintiff] for her totaled vehicle, but an alleged pre-existing scheme between State Farm and [a third party] to ensure that no one would be properly paid under State Farm's insurance contracts." *Id.* at 172. Plaintiff appears to allege that his claim for fraud should be allowed to proceed because, similar to the facts of *McGowan*, Defendant has established a pre-existing scheme to ensure that no one will receive the benefits to which they are entitled under Defendant's contracts. Specifically, Plaintiff alleges, "[a]s a business model, Defendant intends, at the time they issue the contract of insurance, to not perform on the promises they make." (Doc. 1-2 ¶ 61). Plaintiff further

8

states, "Defendants made said promises to Plaintiff Charles Bryant at the time he purchased the insurance, without any intention to keep them. Defendants made these false representations with knowledge of their falsity and with the intent to deceive Plaintiff into purchasing the policy, or inducing him from purchasing a different policy." (*Id.* ¶¶ 62 and 63).

In Georgia, the tort of fraud has five elements: (1) false representation by a defendant; (2) scienter; (3) intention to induce the plaintiffs to act or refrain from acting; (4) justifiable reliance by plaintiffs; and (5) damage to plaintiffs. *Klusack v. Ward*, 234 Ga. App. 178, 179 (1998). While Plaintiff alleges that Defendants committed fraud in its issuance of Plaintiff's insurance contract because of a pre-existing scheme, Plaintiff fails to state sufficient factual information to state a claim. Plaintiff relies solely on broad legal conclusions, and therefore, Plaintiff's claim for fraud does not survive a motion for judgment on the pleadings. *See Sinaltrainal*, 578 F.3d at 1260; *Iqbal*, 556 U.S. at 678-79 ("[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery."). Since Plaintiff's fourth cause of action, "Fraud – Consequential Damages," is premised upon Plaintiff's fraud claim, Plaintiff has also failed adequately to allege fraud – consequential damages. Accordingly, both claims are subject to dismissal

### III. **Plaintiff's Sixth Cause of Action: Violation of the Georgia Uniform Deceptive Trade Practices Act (GUDTPA) and Violation of the Fair Business Practices Act (FBPA)**

As a sixth cause of action, Plaintiff alleges that Defendants have violated both GUDTPA, O.C.G.A. § 10-1-370 *et seq.*, and the FBPA, O.C.G.A § 10-1-390 *et seq.* (Doc. 1-2 ¶ 78). Defendant contends once again that Plaintiff's exclusive remedy is found in O.C.G.A. § 33-4-6, arguing that Plaintiff's cause of action is premised upon Defendant's denial of Plaintiff's claim. (Doc. 4-1 at 7). However, Plaintiff presents its cause of action as an "independent tort" arising as the result of "the fraud of the [Defendants] prior to the contract between the parties, in devising a business model which would deny to their customers that which they paid for." (Doc. 1-2 ¶ 79).

In alleging its cause of action, Plaintiff incorporates facts regarding Defendant's denial of Plaintiff's claim, then states the following allegations:

> Plaintiff is informed and believes, and therefore alleges, that as a regular practice, and as a business model, Defendants sell a product which makes promises that Defendants have no intention of honoring. Defendants have and continue to falsely advertise in the State of Georgia, through such channels of trade as the Internet and in print advertisements. Defendants' false advertising and irresponsible business model is likely to deceive consumers in the State of Georgia. Defendants' false advertising in commercial advertising and/or promotion also misrepresents the nature, characteristics, or qualities of Defendants' products. Defendants, by the aforesaid acts, have engaged in conduct that creates confusion and misunderstanding in the State of Georgia.

(Id. ¶¶ 80-84). Those allegations essentially constitute the whole of Defendant's sixth cause of action.

Though Plaintiff incorporates facts describing Defendant's denial of Plaintiff's claim, those facts do not support the broad allegations of state-wide deceptive practices discussed above. Therefore, Plaintiff's allegations are conclusory and without sufficient factual support to maintain a claim for either a violation of the GUDTPA or the FBPA. *See Sinaltrainal*, 578 F.3d at 1260; *Iqbal*, 556 U.S. at 678-79 ("[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery."). As such, Plaintiff has failed adequately to allege facts supporting his sixth cause of action, which therefore cannot survive a motion for judgment on the pleadings.

### IV.     Plaintiff's Seventh Cause of Action: Negligent Misrepresentation

Plaintiff alleges that Defendants "negligently and/or recklessly misrepresented and concealed from consumers the true nature of their services, which made false, deceptive and illusory the sale of such policies." (Doc. 1-2 ¶ 90). Plaintiff's allegations seem to reference a broad scheme of negligent misrepresentation to all potential consumers rather than the isolated denial of Plaintiff's claim described in Plaintiff's Complaint.

In Georgia, the elements of a claim for negligent misrepresentation are: "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Liberty Capital, LLC v. First*

10

*Chatham Bank*, 338 Ga. App. 48 (2016). Here, Plaintiff again fails to plead enough factual support to state a claim. While the facts in Plaintiff's Complaint describe Defendant's denial of Plaintiff's insurance claim, Plaintiff does not provide any factual information regarding Defendant's alleged misrepresentations to its consumers. Plaintiff's allegations are legal conclusions lacking any support, and therefore, Plaintiff has failed adequately to allege facts supporting his claim of negligent misrepresentation, which therefore, cannot survive a motion for judgment on the pleadings. *See Sinaltrainal*, 578 F.3d at 1260; *Iqbal*, 556 U.S. at 678-79 ("[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery.").

## V.     Plaintiff's Eighth Cause of Action: Unjust Enrichment

Plaintiff argues that "[a]s a result of the conduct described above, Defendants have been and will be unjustly enriched at the expense of Plaintiff." (Doc. 1-2 ¶ 94). "Unjust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for." *Wachovia Ins. Servs., Inc. v. Fallon*, 299 Ga. App. 440, 449 (2009). Plaintiff does not dispute the existence of a legal contract. Therefore, the equitable concept of unjust enrichment does not apply, and Plaintiff's claim for unjust enrichment is subject to dismissal.

## VI.    Plaintiff's Ninth Cause of Action: Statutory Damages and Negligence Per Se

In his ninth cause of action, Plaintiff cites O.C.G.A. § 33-24-14, which requires that "[s]ubject to the insurer's requirement as to payment of premiums, every policy shall be mailed or delivered to the insured or to the person entitled to the policy within a reasonable period of time." Plaintiff notes that "Defendants failed to mail or deliver the policy to the insured or to the person entitled to the policy within a reasonable period of time after its issuance." (Doc. 1-2 ¶ 102). Plaintiff argues that "[t]his is a violation of a statute establishing a duty to take precautions to protect a particular class of persons from a particular injury or type of injury, constituting negligence per se." (*Id.* ¶ 104).

11

Generally, a plaintiff may assert a claim of negligence per se arising from violations of federal or state statutes as long as (1) that plaintiff falls within the class of persons the statute was intended to protect; (2) the harm complained of was the same harm the statute was intended to guard against; and (3) the violation of the statute proximately caused the plaintiff's injury. *McLain v. Mariner Health Care, Inc.*, 279 Ga. App. 410 (2006). Here, while Plaintiff alleges that Defendants violated the cited statute by failing to deliver Plaintiff's policy, Plaintiff fails to allege facts sufficient to satisfy the harm and injury elements of negligence per se. Plaintiff does not indicate what, if any, harm resulted, and further, Plaintiff does not establish that Plaintiff suffered any injury as a result of Defendants' failure to deliver the policy. Therefore, Plaintiff has failed to state a claim of negligence per se, and the cause of action does not survive a motion for judgment on the pleadings.

## VII. Plaintiff's Tenth and Eleventh Causes of Action: Punitive Damages and Attorney's Fees

In Plaintiff's tenth cause of action, Plaintiff alleges that "[t]he facts averred constitute aggravated circumstances authorizing the imposition of punitive damages under O.C.G.A. § 51-12-5.1 (b) and (c)." (Doc. 1-2 ¶ 110). In Plaintiff's Eleventh cause of action, Plaintiff alleges he is entitled to attorney's fees because of Defendants' bad faith "aris[ing] from an independent tort." (*Id.* ¶ 114). However, Plaintiff's claims for punitive damages and attorney's fees are premised upon "causes of action alleged . . . as independent tort[s] arising from the Statutory rights established by the GUDPTA and violation of the FBPA, among other statutes and common law rights, and not by rights established by the contract between the two parties." *See* (*Id.* ¶ 110). As discussed *supra*, Plaintiff's causes of action alleged as independent torts do not survive the motion for judgment on the pleadings, and consequently, Plaintiff's claims for punitive damages and attorney's fees based upon those "independent torts" also fail.

## VIII. Defendants John Does (1-30)

Plaintiff names John Does (1-30) as Defendants in this action. (Doc. 1-2 ¶ 40). The Court dismisses *sua sponte* these John Does (1-30). Fictitious party pleading is not permitted in federal court, unless a plaintiff describes the defendants with enough specificity to

determine their identities. *Richardson v. Johnson,* 598 F.3d 734, 738 (11th Cir.2010). Plaintiff has not made any attempt to amend the complaint or substitute the proper parties, and dismissal is appropriate. *Rosenhaft v. Citibank, N.A.*, 2012 WL 1080388, at *1 (N.D. Ga. Mar. 29, 2012).

## **CONCLUSION**

For the foregoing reasons, Defendant's Partial Motion for Judgment on the Pleadings (Doc. 4-1) regarding Plaintiff's claims 1-4 and 6-11 is **GRANTED**.

**SO ORDERED**, this   20th   day of March, 2017.

   /s/ Leslie J. Abrams
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**